**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ' | |
| | ' | |
| v. | ' | **CRIMINAL NO. H-21-16** |
| | ' | |
| **E.I. DU PONT DE NEMOURS AND CO.,** | ' | |
| **Defendant.** | ' | |

## PLEA AGREEMENT

The United States of America, by and through Alamdar Hamdani, United States Attorney

for the Southern District of Texas, and John R. Lewis, Assistant United States Attorney, and the

defendant, E.I. Dupont de Nemours and Co. ("DuPont" or "Defendant"), and Defendant's counsel,

pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have

entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.   Defendant agrees to plead guilty to Count Three of the Indictment.   Count Three

charges Defendant with Negligent Release of Extremely Hazardous Substance, in violation of Title

42, United States Code, Section 7413(c)(4).   Defendant, by entering this plea, agrees that it is

waiving any right to have the facts that the law makes essential to the punishment either charged

in the indictment, or proved to a jury beyond a reasonable doubt.

2.   Defendant agrees that this Agreement will be executed by an authorized representative.

Defendant further agrees that a Resolution duly adopted by the Board of Directors of DuPont, in

the form attached to this Agreement as Exhibit 1, or in substantially similar form, authorizes the

signature on this Agreement by DuPont's representative.

3.   Defendant further agrees to pay the United States a fine in the amount of twelve million

dollars ($12,000,000.00).   Defendant stipulates that there is a factual basis for the imposition of a

criminal fine in the amount of $12 million pursuant to 18 U.S.C. § 3571(d) and that the fine payment made pursuant to this paragraph does not exceed the statutory maximum fine available under the applicable statute.   Defendant further waives any right to a jury or bench trial as to the fine payment.   The fine shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

4.   Defendant agrees to serve a term of probation for a period of two (2) years from the date of sentencing pursuant to 18 U.S.C. § 3561(c)(2) and United States Sentencing Guidelines §§ 8D1.1 and 8D1.2.   In addition to whatever conditions might be imposed by the Court, terms of probation shall include the standard conditions of probation and the following special conditions, pursuant to 18 U.S.C. § 3563(a) and (b):

(a)   <u>Compliance with the Law</u>: Defendant shall not commit another federal, state, or local crime during the term of probation.

(b)   <u>Cooperation with Probation Office</u>: Defendant shall fully cooperate with the United States Probation Office. Defendant shall answer truthfully all inquiries by the Probation Officer; shall provide full access to any of Defendant's operating locations; shall give ten (10) days' prior notice of any intended change in principal business or mail address; and shall provide notice any material change in Defendant's economic circumstances that might affect Defendant's ability to pay the fine and other financial obligations set forth herein.

(c)   <u>Community Service Payment</u>: Pursuant to United States Sentencing Guidelines § 8B1.3 and in furtherance of the sentencing principles provided for under 18 U.S.C. § 3553(a), at the time of sentencing, Defendant shall make a Community Service payment of $4 million ($4,000,000.00) to the National Fish and Wildlife Foundation

2

("NFWF") as provided below.   NFWF, a nonprofit organization established by the United States Congress pursuant to 16 U.S.C. §§ 3701-3710, is specifically empowered by Congress to "receive and administer restitution and community service payments, amounts for mitigation of impacts to natural resources, and other amounts arising from legal, regulatory, or administrative proceedings, subject to the condition that the amounts are received or administered for purposes that further the conservation and management of fish, wildlife, plants, and other natural resources."   16 U.S.C. § 3703(c)(1)(K).

(i)     Defendant shall remit the Community Service payment to NFWF by either certified check or electronic funds transfer.   A certified check should be delivered to the National Fish and Wildlife Foundation, attention Chief Financial Officer, 1133 15th Street NW, Suite 1000, Washington DC, 20005, and should include a reference to the case number in this proceeding.   A payment via electronic funds transfer should be made in accordance with written wiring instructions provided by NFWF through its Chief Financial Officer or Senior Vice President, Impact-Directed Environmental Accounts, at the time of transfer.

(ii)    NFWF shall use the Community Service funds paid by Defendant to fund projects, activities, or initiatives intended to benefit air quality in and around areas adjacent to the western shores of Galveston Bay, Texas.   The types of projects, activities, and initiatives to be considered for funding by NFWF should be focused on, but not necessarily limited to, those intended to: (1) acquire real property located in or around La Porte, Texas, for purposes of protecting, preserving, and/or restoring such property in or to its natural condition for the benefit of the surrounding community; (2) establish or maintain air quality monitoring systems, with

3

particular emphasis on collecting data on air pollutants to be shared with the surrounding community; (3) aid in evaluating the impacts of air quality on human health, environmental quality, and ecosystems; (4) support research and analysis of the environmental fate, transport, and impact of air pollution; (5) restore ecosystems adversely impacted by air pollution; (6) implement tree planting or other revegetation in degraded areas in order to increase interception of particulate matter on plant surfaces and absorption of gaseous pollutants through leaf systems; (7) support education, training, public outreach, and public awareness relating to the existence and potential impacts of air pollution in communities adjacent to Galveston Bay; and/or (8) retrofit or replace school buses used in communities adjacent to Galveston Bay in order to reduce human exposure to diesel exhaust or other airborne pollutants.

(iii)    NFWF shall use best efforts to obligate the Community Service funds to appropriate projects, activities, and initiatives within three (3) years of the date of entry of Judgment in this case. NFWF shall further report to the United States Probation Office for the Southern District of Texas and to the United States Department of Justice, on at least an annual basis, regarding the status and disposition of the Community Service funds it has received pursuant to this Section, until all such funds have been expended.

(iv)    With respect to the work described in this Paragraph above, Defendant shall assume no responsibilities or obligations other than making the payment described in this Paragraph.   Defendant shall not seek any reduction in its tax obligations as a result of this Community Service payment nor shall Defendant characterize,

4

publicize, or refer to the payment as a voluntary donation or a voluntary contribution.

5.   Defendant agrees to provide the United States Attorney's Office for the Southern District of Texas and the United States Probation Office with immediate notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets or similar action affecting Defendant's performance of this Agreement. Defendant shall not through a change of name, business reorganization, sale of purchase of assets, divestiture of assets, or similar action, seek to avoid the obligations and conditions set forth in this Agreement.

## Punishment Range

6.   The **statutory** maximum penalty for each violation of Title 42, United States Code, Section 7413(c)(4), is a term of probation of not more than 5 years, *see* Title 18, United States Code, Section 3561(c)(2), and a fine not more than the greater of: $500,000.00 or, if any person derived pecuniary gain from the offense or if the offense resulted in pecuniary loss to a person other than Defendant, the greater of twice the gross gain or twice the gross loss. *See* Title 18, United States Code, Sections 3571(c)(4) and 3571(d).   Defendant understands that it cannot have the imposition or execution of the sentence suspended.

## Mandatory Special Assessment

7.   Pursuant to Title 18, United States Code, Section 3013(a)(1)(B)(iii), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred twenty-five dollars ($125.00) per count of conviction.   The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Waiver of Appeal and Collateral Review**

8. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that the United States Constitution and the laws of the United States include the right to contest or collaterally attack its conviction or sentence after its conviction has become final. Knowing that, Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the plea, conviction, and sentence (or the manner in which it was determined) by means of any post-conviction proceeding, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted. Further Defendant waives any and all constitutional and non-jurisdictional defects. In the event the Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this Agreement and seek specific performance of these waivers.

9. Defendant understands and agrees that each and every waiver contained in the Agreement are made in exchange for the concessions made by the United States in this Agreement.

**The United States' Agreements**

10. The United States agrees to the following:

(a)     If Defendant pleads guilty to Count Three of the indictment and persists in that plea through sentencing, and if the Court accepts this Agreement, the United States will move to dismiss the remaining counts of the indictment at the time of sentencing.

(b)     The United States agrees it will not further criminally prosecute Defendant, or any other affiliated or related corporate entity, in the Southern District of Texas

6

for any offenses arising from conduct charged in the indictment. This Agreement does not provide or promise any waiver of any civil or administrative actions, sanctions, or penalties that may apply, including but not limited to: fines, penalties, suspension, debarment, listing, licensing, injunctive relief or remedial action to comply with any applicable regulatory requirement.

### Agreement Binding - Southern District of Texas Only

11. This Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States- Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report if a report is ordered;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with Section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

7

**Sentence Determination**

13.   Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a).   Defendant understands and acknowledges that, at sentencing, the Court is required to consider the United States Sentencing Guidelines, including Chapter Eight which provides guidance for the sentencing of corporate defendants, together with the other sentencing goals set forth in Title 18, United States Code, Section 3553(a).   However, pursuant to §§ 8C2.1 and 8C2.10, the United States Sentencing Guidelines that pertain to the sentencing of organizations do not determine the fine range in cases involving environmental crimes. Instead, the fine is to be determined under 18 U.S.C. §§ 3553 and 3571. All other sections of Chapter Eight of the Sentencing Guidelines that are applicable to corporate defendants are applicable to this case, including provisions for any payment of restitution, community service, and probation.

**Rights at Trial**

14.   Defendant understands that by entering into this Agreement, it surrenders certain rights as provided in this Agreement.   Defendant understands that the rights of a defendant include the following:

(a)      If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree; and

(b)      At a trial, the United States would be required to present witnesses and other

8

evidence against Defendant. Defendant would have the opportunity to confront those witnesses and its attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on its own behalf. If the witnesses for Defendant would not appear voluntarily, it could require their attendance through the subpoena power of the court.

**Factual Basis for Guilty Plea**

15. Defendant is pleading guilty because it is in fact guilty of the charges contained in Count Three of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

a) Defendant owned a chemical plant in LaPorte, Texas ("the LaPorte facility").

b) The LaPorte facility manufactured, among other things, an insecticide called Lannate. To manufacture Lannate, the LaPorte facility used methyl mercaptan ("MeSH).

c) MeSH is classified as an extremely hazardous substance pursuant to 42 U.S.C. § 11002(a)(2).

d) The LaPorte facility had a vent system that was used to transport waste gases to the incinerator. Because a low point existed in the vent system, liquid condensate would sometimes form in the vent system and collect at this low point. The liquid condensate was routinely drained by DuPont employees to reduce pressure in process vessels and to allow the process to continue to operate.

e) On November 12, 2014, a DuPont employee inadvertently left a valve open on the

liquid MeSH feed line causing water to enter the line.   Due to cold temperatures, the liquid MeSH reacted with the water forming a slushy material called a hydrate.   The hydrate blocked the flow of MeSH through the feed line to the Lannate process.

f)    On November 14, 2014, DuPont employees, including Ken Sandel, including Ken Sandel, who at that time was the Unit Operations Leader for the insecticide unit, met to discuss how to clear the hydrate from the piping.   Employees determined that the operators should heat the outside of the piping with hot water hoses and use a series of valves to vent excess pressure caused by the MeSH returning to vapor form to the vent system.   To safely vent the excess pressure without introducing liquid to the vent system, the valves had to be cracked rather than fully opened.

g)    Ken Sandel observed these activities being performed in the field on November 14, 2014.   When the day shift ended, however, the line had not been fully cleared.   At shift change, the day shift DuPont operators provided oral instructions to their counterparts on the night shift.   Ken Sandel and other DuPont employees did not provide sufficient written instructions to the oncoming night shift for how to safely clear the blockage on the remaining part of the line.

h)    The night shift did not have written instructions, opened the valves fully and left the MeSH pump on while hot water was being applied to the outside of the MeSH feed line. When the blockage cleared on the morning of November 15, 2014, liquid MeSH began to flow into the vent system.

i)    A DuPont employee believing the vent system to contain the expected liquid

condensate present during normal operations (and not liquid MeSH), directed

another DuPont employee to drain the vent system.

j)    That DuPont employee opened the valves expecting to drain liquid condensate,

but instead liquid MeSH was released resulting in the deaths of four DuPont

employees and ultimately traveled downwind into the city of Deer Park, Texas.

k)    Thus, on or about November 15, 2014, DuPont negligently released MeSH to the

ambient air and at the time negligently placed another person in imminent danger

of death or serious bodily injury.

### Other Relevant Factors

16.   In addition, below are additional facts that the United States and Defendant agree

support the terms of this plea agreement:

a)    The La Porte facility never restarted Lannate operations after the November 2014

incident.   The facility was dismantled and demolished in 2018, and DuPont sold

the site to a third party in 2021.

b)    The Defendant does and has previously accepted responsibility for the November

2014 incident in many ways, including voluntarily cooperating with investigations

conducted by multiple government agencies such as the U.S. Environmental

Protection Agency and the Occupational Safety and Health Administration in

addition to the U.S. Department of Justice.   Among other things, the Defendant

provided documents upon request, without the need for subpoenas, and made

witnesses available for interviews with government and law enforcement officials.

The Defendant also voluntarily entered into civil settlements with federal, state

and local agencies and paid over $3.26 million in civil penalties.   The Defendant

11

has also paid restitution to those injured or killed during the 2014 incident.

## Breach of Plea Agreement

17.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, the Defendant will not have the right to withdraw the guilty plea, Defendant's plea and sentence will stand, and Defendant shall be subject fully to criminal prosecution for any crimes that it has committed or might commit, if any.   Furthermore, the United States will be free to use against Defendant, directly or indirectly, in any criminal proceeding, all statements, information and materials provided by Defendant including: (i) the stipulated factual basis statement in this Agreement; (ii) any statements made by Defendant's agent on behalf of Defendant in providing a factual basis for the plea at a guilty plea hearing; and (iii) any evidence derived from such statements.   Defendant knowingly, voluntarily, and intelligently waives any argument under the United States Constitution, any statute, Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), and any other federal rule, that these statements or any evidence derived from these statements should be suppressed or are inadmissible.

18.   This Agreement is made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and the parties agree that the sentence set forth herein is the appropriate disposition of this case.   If the Court rejects this Agreement, it is further agreed that Defendant may withdraw its plea and all of the parties may withdraw from this Agreement.

## Complete Agreement

19.   This written plea agreement, consisting of 14 pages, including the attached addendum of Defendant and its attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the

12

United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against it and that it is pleading guilty freely and voluntarily because it is guilty.

20.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _April 24_, 2023.

Thomas Warnock (Mar 8, 2023 12:27 EST)
Thomas A. Warnock
Associate General Counsel
Corporate Representative for Defendant
E.I. DuPont de Nemours and Co.

Subscribed and sworn to before me on _April 24_, 2023.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By:    _Rachel Willborg_
Deputy United States District Clerk

APPROVED:

Alamdar Hamdani
United States Attorney

By:
John R. Lewis
Assistant United States Attorney
Southern District of Texas

Lily N. Chinn
Attorney for Defendant
E.I. DuPont de Nemours and Co.

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA ' 
 ' 
v. ' CRIMINAL NO. 
 ' 
E.I. DU PONT DE NEMOURS AND CO., ' 
Defendant. ' 

### PLEA AGREEMENT -- ADDENDUM

I am E.I. DuPont de Nemours and Co.'s attorney.  I have fully explained to Defendant's

Corporate Representative its rights with respect to the pending indictment. I have carefully

reviewed every part of this plea agreement with Defendant's Corporate Representative.  To my

knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     _4/24/2023_
Lily N. Chinn                        Date
Attorney for Defendant
E.I. DuPont de Nemours and Co.

I have consulted with Defendant's attorney and fully understand all Defendant's rights with

respect to the indictment pending against Defendant.  I have read and carefully reviewed every

part of this plea agreement with Defendant's attorney.  Defendant understands this agreement and

Defendant voluntarily agrees to its terms.

_____     Mar 8, 2023
Thomas Warnock (Mar 8, 2023 12:27 EST)   Date
Thomas A Warnock
Associate General Counsel
Corporate Representative for Defendant
E.I. DuPont de Nemours and Co.

14